**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**DAVID K. PAYNE**
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GWEN E. MORGAL-HENRICH, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 46A05-1111-DR-645 |
| | ) | |
| DAVID BRIAN HENRICH, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE LAPORTE CIRCUIT COURT
The Honorable Thomas Alevizos, Judge
Cause No. 46C01-0908-DR-165

**June 26, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Gwen Morgal-Henrich ("Wife") appeals the trial court's distribution of property in the dissolution of her marriage to David Henrich ("Husband") and the trial court's child support order. We affirm in part, reverse in part, and remand.

**Issues**

Wife raises two issues, which we restate as:

I.    whether the trial court properly divided the marital estate; and

II.   whether the trial court properly calculated Husband's weekly gross income for child support purposes.

**Facts**

Husband and Wife married on March 26, 2000.[1] Wife had adult children from a previous marriage and one minor child, D.H., who was born in May 1993, and Husband also had children from a previous marriage. Husband adopted D.H. in June 2001.

Husband and Wife purchased a residence in February 2000 for $230,000. The parties made a down payment of $105,000. $80,000 of the down payment was from the

---

[1] The trial court found that the parties were married on September 9, 2006, but Husband testified that the parties married on March 26, 2000.

2

sale of Wife's residence, and they obtained the remaining $25,000 from Wife's father.[2]

Wife also had life insurance policies that she owned prior to the marriage.[3]

Husband is a member of an operating engineers union and does seasonal work. His income varied greatly during the marriage depending on the availability of work. Wife has a bachelor's degree in nutrition and has been employed at various times making $14 to $15 an hour. Both were unemployed at the time of the final hearing. Moreover, the parties filed for bankruptcy in 2007.

Wife and D.H. left the marital residence on July 31, 2009, and Husband filed a petition for dissolution on August 10, 2009. The final hearing was held in April 2011 and June 2011. The trial court then issued findings of fact and conclusions thereon.

Regarding the division of marital property, the trial court found that the total martial assets were valued at $153,485.57. The trial court awarded Husband: (1) the marital residence, which was valued at $200,000 but was subject to $197,912.70 in mortgages; (2) his truck along with any indebtedness; (3) $56,293.38 of his pension; (4) personal property remaining at the residence; (5) the parties' guns; (6) $3,300 he received from the sale of a motorcycle; (7) livestock; (8) $2,500 he received from the sale of a tractor; and (9) $56 in antique currency. The trial court awarded Wife: (1) $30,919.90 of Husband's pension; (2) her vehicle along with any indebtedness; (3) three life insurance

---

[2] Wife argues that they obtained the remaining $25,000 from her father, while Husband testified that he provided the other $20,000. For purposes of this appeal, we will assume that Wife provided the additional funds.

[3] In her brief, Wife argues that she had the three policies before her marriage to Husband. However, her testimony at the hearing seems to indicate that one of the policies was purchased during the marriage. See Tr. p. 165.

3

policies with a total cash value of $30,681.74; and (4) her Ameriprise investment account. The parties were ordered to pay an American Express judgment equally and pay their own attorney fees.

Regarding child custody and child support, the trial court found that Wife had sole custody of D.H. during the proceedings and that D.H. was emancipated as of the date of the final hearing, June 7, 2011. The trial court imputed a weekly gross income of $290 per week to Wife. The trial court noted that Husband had been unemployed during the majority of the dissolution proceedings and found that his weekly gross income was $390 per week, which was based on his unemployment benefits. The trial court ordered that Husband pay $65 per week in child support from the date of filing to the date of the final hearing for a total of $6,240 in child support. The trial court noted that no child support had been paid during the pendency and that there was an arrearage. Wife now appeals.

**Analysis**

Initially, we note that Husband did not submit an appellee's brief in this case. When the appellee has failed to submit an answer brief, we need not undertake the burden of developing an argument on the appellee's behalf. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006). We will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. Id. Prima facie error in this context is defined as, "at first sight, on first appearance, or on the face of it." Id. Where an appellant is unable to meet this burden, we will affirm. Id.

It appears that the trial court entered sua sponte findings of fact and conclusions thereon. Sua sponte findings control only as to the issues they cover, and a general

4

judgment will control as to the issues upon which there are no findings. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. Id. When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. Id. First, we must determine whether the evidence supports the trial court's findings of fact. Id. Second, we must determine whether those findings of fact support the trial court's conclusions of law. Id.

Findings will only be set aside if they are clearly erroneous. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Id. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. Id. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. Id.

## I. Division of Marital Property

Wife argues that the trial court abused its discretion when it divided the marital estate. "This case turns on whether the trial court's division of the marital property was just and reasonable." Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). "Although this is in some sense an issue of law, it is highly fact sensitive and is subject to an abuse of discretion standard." Id. We will not weigh evidence, but we will consider the evidence in a light most favorable to the judgment. Id.

5

In an action for dissolution of marriage, the trial court is required to divide the marital property in a "just and reasonable manner." Ind. Code § 31-15-7-4(b). Indiana Code Section 31-15-7-5 provides:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1)  The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2)  The extent to which the property was acquired by each spouse:
>
>   (A)  before the marriage; or
>
>   (B)  through inheritance or gift.
>
> (3)  The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4)  The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5)  The earnings or earning ability of the parties as related to:
>
>   (A)  a final division of property; and
>
>   (B)  a final determination of the property rights of the parties.

6

A party seeking to rebut the presumption of equal division of marital property bears the burden of proof in doing so. Beckley v. Beckley, 822 N.E.2d 158, 163 (Ind. 2005); I.C. § 31-15-7-5.

According to Wife, the trial court abused its discretion when it failed to deviate from the presumptive equal division of marital assets. Wife argues that she brought significant assets into the marriage, which should have favored an unequal division in her favor. Wife specifically argues that she contributed a $105,000 down payment on their house and that she brought the life insurance policies into the marriage. Wife also argues that she contributed to the marriage through part-time work and "homemaking duties," that Husband has a greater earning ability than she does, and that Husband sold marital assets for less than the market value.

The evidence presented at the final hearing demonstrated that Husband and Wife purchased a residence for $230,000 and that the parties made a down payment of $105,000. $80,000 of the down payment was from the sale of Wife's residence, and the remaining $25,000 was from Wife's father. Despite the substantial down payment, at the time of the final hearing, the residence was valued at $200,000, but it was subject to almost $198,000 in mortgages. The equity in the marital residence provided by Wife is now minimal due to additional mortgages on the property. Wife also had life insurance policies that she owned prior to the marriage. However, Wife admitted that she continued to make payments on the policies during the marriage.

As for the earning ability of the parties, Husband is a member of an operating engineers union, does seasonal work, and has an income that varies greatly depending on

7

the availability of work. Wife has a bachelor's degree in nutrition and has been employed at various times making $14 to $15 an hour. Both were unemployed at the time of the final hearing. Moreover, the parties filed for bankruptcy in 2007. As for Husband's alleged dissipation of assets, Wife argues that he sold assets, specifically a tractor and a motorcycle, for below market value. Husband testified that he needed cash to pay bills and that he found buyers for the items that would pay cash. There is no evidence in the record as to the actual market value of the items.

Our supreme court has held that a "trial court's disposition is to be considered as a whole, not item by item." Fobar, 771 N.E.2d at 59.

> In crafting a just and reasonable property distribution, a trial court is required to balance a number of different considerations in arriving at an ultimate disposition. The court may allocate some items of property or debt to one spouse because of its disposition of other items. Similarly, the factors identified by the statute as permitting an unequal division in favor of one party or the other may cut in different directions. As a result, if the appellate court views any one of these in isolation and apart from the total mix, it may upset the balance ultimately struck by the trial court.

Id. at 60. In Fobar, our supreme court determined that, "[a]lthough several of the couple's assets were brought to the marriage, there was no requirement that any be set off for one spouse, and no requirement that the overall pot be unequally divided." Id. Rather, the court concluded that "the trial court was within its discretion in dividing the property 50-50, and was not required to alter its virtually equal division of the marital property to reflect [the wife's] interest in the inherited . . . property." Id.

8

Similarly, here, we cannot view Wife's contribution to the marital assets in isolation. Wife's premarital assets were used to purchase marital assets, and those marital assets are now subject to substantial mortgages. Further, neither Husband nor Wife has had a substantial consistent income, and we cannot say that Husband's sale of the tractor and motorcycle required the trial court to deviate from the equal division presumption. Given all of the circumstances here, we cannot conclude that the trial court abused its discretion by applying the equal division presumption. As in Fobar, the trial court was not required to alter its equal division of the marital property to reflect Wife's premarital assets.

## II. Child Support

Next, Wife argues that the trial court erred when it calculated Husband's weekly gross income for child support purposes. "A trial court's calculation of child support is presumptively valid." Young v. Young, 891 N.E.2d 1045, 1047 (Ind. 2008). A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion. Sexton v. Sedlak, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), trans. denied. A trial court abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law. Id.

The circumstances of this case are unusual in that the child support calculation relates only to the child support owed from the date the petition for dissolution was filed to the date of the final hearing, when D.H. was emancipated. Thus, the child support calculation is solely a retroactive calculation, and Husband's income for that time period

9

is known.  Wife argues that the trial court improperly calculated Husband's weekly gross income in making its child support calculation.

The Indiana Child Support Guidelines define weekly gross income and provide:

> For purposes of these Guidelines, "weekly gross income" is defined as <u>actual Weekly Gross Income</u> of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits. Weekly Gross Income of each parent includes income from any source, except as excluded below, and includes, but is not limited to . . . unemployment insurance benefits . . . .

Ind. Child Support Guideline 3 (emphasis added).

In 2008, Husband earned $58,160.  In 2009, he earned $15,490 plus $16,000 in unemployment benefits.  In 2010, he earned $89,608 plus $3,000 in unemployment benefits.  At the time of the final hearings in April and June 2011, Husband had been receiving unemployment benefits of $390 per week since November 2010.  Husband proposed a weekly gross income of $390 in his child support worksheet, while Wife proposed a weekly gross income of $1,723 (for an annual income of approximately $89,600) in her child support worksheet.

The trial court found Husband "has been unemployed throughout the majority of the pendency of this action.  He earned $390 per week in unemployment benefits."  App. p. 99.  We acknowledge that Husband had been unemployed since November 2010.  However, he earned substantially more income than merely unemployment benefits from August 2009 through June 2011, the time period at issue here.  Although Husband's income fluctuates seasonally, Husband's actual income during this time period is easily

ascertainable. The use of $390 per week as his weekly gross income results in a substantial reduction of Husband's child support obligation, while the use of $1,723 as his weekly gross income, as advocated by Wife, would result in a substantially inflated child support obligation.

Because Husband's actual income during the relevant time period is known, we conclude that the trial court abused its discretion by using $390 per week as Husband's weekly gross income. We reverse and remand for the trial court to recalculate Husband's child support arrearage. On remand, given Husband's fluctuating income, we recommend that the trial court use an income averaging calculation to determine Husband's weekly gross income. See, e.g., Trabucco v. Trabucco, 944 N.E.2d 544, 552-53 (Ind. Ct. App. 2011) ("In light of Husband's self-employment, the significant fluctuations in his income over the past several years, and his failure to adequately document his actual income at the time of the final hearing, the trial court's decision to use an income averaging approach to calculate Husband's weekly gross income for child support purposes was not clear error."), trans. denied.

**Conclusion**

The trial court properly divided the marital assets, but the trial court abused its discretion when it calculated the child support owed by Husband. We affirm in part, reverse in part, and remand for a recalculation of Husband's child support.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and MAY, J., concur.

11